SHAW, APPELLANT, *v.* CENTRAL OIL ASPHALT CORP., APPELLEE.

(No. 10134—Decided September 30, 1981.)

Mr. *Charles E. Smart* and Mr. *R. C. Norris,* for appellant.

Mr. *David M. Best,* for appellee.

VICTOR, P.J. This appeal is from a summary judgment granted in favor of the defendant by the Court of Common Pleas of Summit County.

Rufus Shaw, the plaintiff-appellant, was a truck driver employed by Matlack, Inc. As one of his duties, he would drive tank trucks to Central Oil Asphalt Corp., defendant-appellee herein, to be filled with oil or asphalt or some other such substance. The loading procedure required that the truck be filled from the top. This meant that the driver had to climb a set of stairs to the loading platform from which he would open the lid situated atop the truck. One of Central Oil's employees would then fill the truck after which the driver would close the lid. It was the driver's responsibility to see that the lid was secured. Throughout the course of his employment, Shaw had occasion to utilize this procedure at Central Oil as many as one hundred times, although not all at the same loading platform.

On November 7, 1977, at approximately 4:30 a.m., Shaw was at Central Oil for the purpose of loading his truck with one of Central Oil's products. In so doing, he ascended the stairs to the platform and opened the lid of the truck. While one of Central Oil's employees filled the truck, Shaw descended the stairs and conversed with other truck drivers. After the loading was completed he was summoned to the platform to close the tank lid. This was approximately ten minutes after he had come off the platform. While climbing the stairs the second time, Shaw tripped on one of the steps, fell sideways, and through the opening between the handrail and the steps. He suffered personal injuries and as a result filed this suit.

Shaw alleged that the step he tripped on was bent and bowed out. He further alleged that the handrail was defective in that it did not have an intermediate rail situated between the top rail and the steps which would have prevented his fall to the ground.

Central Oil moved for summary judgment claiming that because of Shaw's many prior uses of the staircase, he was charged as a matter of law with knowl-

edge of its condition. Therefore, the defense argued, reasonable minds could not differ that Shaw knew of the danger and was either contributorily negligent or had assumed the risk, thus barring his recovery.

The trial court granted the summary judgment charging Shaw with knowledge of the defects because of his prior use of the staircase and barring recovery on "a contributory negligence theory." Nothing was said concerning assumption of the risk.

After this decision was made, Shaw filed a motion to vacate the judgment and a motion to amend the complaint. His proposed amendment alleged wanton misconduct to which contributory negligence is not a defense. Both motions were overruled and Shaw filed this appeal.

Assignments of Error 1 and 2

"1. In an action to recover for injuries suffered when a business invitee trips and falls to the ground from an outside stairway, the evidence shows that it was a rainy night, the steps were wet and of dark construction, that plaintiff caught the toe of his shoe on an odd offset of a stairway step that was not uniform with the other steps, that after losing his balance he grabbed for a rail, missed and was pitched through the open space between the handrail and the steps, the rule of *Leighton* v. *The Hower Corporation,* 149 Ohio St. 72 [36 O.O. 432] (1948) and *Raflo* v. *Losantiville Country Club,* 34 Ohio St. 2d 1 [63 O.O.2d 1] (1973), do [sic] not apply, and a defense summary judgment based thereon is error.

"2. In such case, it is error for the trial court to determine that plaintiff was charged as a matter of law with knowledge of the absence of an intermediate guardrail and that the failure of defendant to construct the stairway as required by municipal ordinance and accepted building industry standards was not the proximate cause of plaintiff's fall."

Shaw's first two assignments of error are considered together as they are both concerned with the trial court's finding that he was charged with knowledge of the defective conditions of the stairs. Specifically, Shaw's first assignment claims that the trial court applied the wrong rule of law in holding that he was charged with knowledge of the bent step while his second assignment states that the court erred in charging him with knowledge of the condition of the handrail.

In considering Shaw's prior use of the stairs to charge him with knowledge of defects therein, the court relied on *Leighton* v. *Hower Corp.* (1948), 149 Ohio St. 72 [36 O.O. 432], and *Raflo* v. *Losantiville Country Club* (1973), 34 Ohio St. 2d 1 [63 O.O.2d 1], both of which held that such knowledge can be found from prior usage by the plaintiff. However, both cases are distinguishable from the case at bar.

In *Leighton,* the plaintiff traversed a step leading into a restroom. On the way out, plaintiff forgot the step was there and fell, suffering injuries. In *Raflo,* the plaintiff crossed one step while entering a country club and fell while exiting. At trial in *Leighton,* the plaintiff claimed that on the way out of the restroom she became "temporarily oblivious" to the step. Because of her previous use of the step, the court charged her with knowledge of its existence as did the court in *Raflo.* In its opinion in *Leighton,* the court reasoned that the fact that plaintiff had gained successful entrance to the restroom proved her knowledge of the step's existence. The step was a clear obstacle that she had to overcome in order to enter the restroom. Without knowledge of its existence, she could not have entered the room without stumbling. Since she did not stumble or fall on the way in, reasonable minds could only conclude that she had knowledge of the step.

Similarly, in the case at bar, the fact that Shaw stood atop the platform demonstrated that he had knowledge of the

existence of the staircase. Without such knowledge he would have never reached the platform. But a distinction must be drawn between knowledge of the existence of the staircase and knowledge of its condition. Reaching the platform did not require that Shaw have knowledge of the condition of each step. Such detailed knowledge was not essential to the successful negotiation of the staircase. Indeed, Shaw could have continued to use the stairs without ever learning that one was bent. Therefore, his prior use alone does not demonstrate with the conclusiveness necessary to grant a summary judgment that Shaw knew the conditions of which he complains.

A summary judgment precludes a jury's consideration of a case and should, therefore, be used sparingly, only when reasonable minds can come to but one conclusion. Civ. R. 56(C) mandates that the evidence be construed most strongly in favor of the non-moving party. See *Vetovitz Bros., Inc.* v. *Kenny Constr. Co.* (1978), 60 Ohio App. 2d 331 [14 O.O.3d 292]. With this in mind we hold that knowledge of a condition should be charged as a matter of law only when the condition is so obvious that a jury could only conclude that a reasonably prudent person would or should have known it. In cases where prior usage is utilized to charge one with knowledge of a defective condition such prior usage in itself is not conclusive unless knowledge of the condition was essential to the success of the prior use.

Ohio law supports this conclusion. In both *Leighton* and *Raflo*, the knowledge to be charged the plaintiffs was essential to their prior success in using the steps. However, in *Haarmeyer* v. *Roth* (1960), 113 Ohio App. 74 [17 O.O.2d 76], such was not the case, and the result was different. In that case the plaintiff fell on a flight of stairs which had no handrail. The defense claimed contributory negligence and a directed verdict was based thereon. The court of appeals recognized that the plain-tiff was familiar with the premises through prior use. However, it reversed, saying that whether she knew there was no handrail and failed to use ordinary care for her own safety was clearly a question of fact for the jury to determine. It is important to note that knowledge of the handrail's absence in *Haarmeyer* was not essential to the plaintiff's prior use of the stairs. She could have used the stairs on many occasions and never been made aware of the missing rail. Therefore, her knowledge of that condition became a jury question.

Central Oil cites *Settles* v. *Strobridge Lithographing Co.* (1956), 101 Ohio App. 479 [1 O.O.2d 397], to refute the conclusion of *Haarmeyer*. In that case the plaintiff fell down a staircase from which the handrail had been removed three months earlier. A jury found for the defendant. The court of appeals affirmed saying that the plaintiff had assumed the risk. However, *Settles* does not support Central Oil's position. There the court did not look solely to the plaintiff's prior use as did the court here. Rather the court in *Settles* looked to "the plaintiff's own testimony and all the evidence" in finding that she "clearly understood" the danger. Also the court noted that the facts concerning assumption of the risk were "undisputed," indicating that the plaintiff never denied having knowledge of the missing handrail. Therefore, her knowledge was never truly in issue. Clearly, the *Haarmeyer* case, in which knowledge was disputed, and therefore at issue, is more applicable to the case at bar.

Central Oil also cites *Plotner* v. *Great Atlantic & Pacific Tea Co.* (1938), 59 Ohio App. 367 [13 O.O. 142], where the plaintiff fell on an oil spot in a grocery store parking lot. The court found that she had assumed the risk. But once again her knowledge of the condition was not at issue as she admitted knowing there were oil spots on the parking lot before traversing it. Therefore, *Plotner* is not applicable.

, Central Oil cites no Ohio cases, other than *Leighton* and *Raflo,* for the proposition that prior use alone is enough to charge a person with knowledge of dangerous conditions. As stated before, the nature of the conditions in *Leighton* and *Raflo* were such that reasonable minds could come to only one conclusion. Since in the case at bar reasonable minds could differ as to Shaw's knowledge, the question should have gone to the jury.

The above reasoning applies as well to the absence of an intermediate handrail. Although the condition of the handrail can be more noticeable than the condition of one step, knowledge of the details of its condition in this case was not essential to the successful negotiation of the steps. Therefore, Shaw's prior use in itself is not enough to charge him with knowledge of the handrail's absence. The question of such knowledge is then one for the jury. See *Haarmeyer, supra.*

It is important to note that even if knowledge of the conditions could be charged to Shaw, his lack of due care to avoid injury to himself would also have to be shown in order to find him contributorily negligent. Knowledge of a danger does not in itself establish contributory negligence. Here the trial court erred in that after charging Shaw with knowledge of the defects in the stairs, the court said nothing as to how Shaw strayed from the standard of due care.

In both *Leighton* and *Raflo* such departure from due care was found in the statements of the plaintiffs themselves. In *Leighton* the plaintiff claimed to have been "temporarily oblivious" to the existence of the step. In *Raflo,* plaintiff stated that although the step was obvious when entering the room, it was not apparent when leaving. The court found that the failure to avoid a known peril was not excused because the plaintiff " 'did not think' or 'forgot.' " Thus, in both *Leighton* and *Raflo* the negligence of the plaintiff was not found simply in the knowledge of the danger, but rather in

the failure to thereafter exercise ordinary care to avoid injury.

Acceptance of a known danger is enough to show assumption of the risk. But this case was decided on contributory negligence which is based on lack of care. Therefore, more than mere knowledge of a defect must be shown to support a summary judgment based on contributory negligence. See *Centrello* v. *Basky* (1955), 164 Ohio St. 41 [57 O.O. 77], and cases cited therein for a discussion of the distinction between contributory negligence and assumption of the risk.

Shaw also argues in his second assignment of error that the court erred in not finding the proximate cause of his injuries to be the absence of an intermediate handrail. We cannot say here what the proximate causes of Shaw's injuries were as that is a question for the jury. Suffice it to say that in light of our discussion thus far, reasonable minds could differ as to whether Shaw's negligence, if any, was a contributing proximate cause of his injuries.

### Assignment of Error 3

"In such case, it is error for the court to deem plaintiff's evidence as 'ambiguous,' construe it against plaintiff and render summary judgment for the defendant."

Shaw's third assignment of error claims that the court erred when it ruled that reasonable minds could not differ that the lighting conditions were adequate. Shaw states in his affidavit that the stairs were not brightly lit; in his deposition he categorically states that the lighting was not a problem. The court noted that if Shaw could demonstrate that he could not see the steps due to darkness, then an exception would arise as to the rule of charging him with knowledge of the condition of the stairs. As we have already held that Shaw cannot be charged with such knowledge, this question is moot.

### Assignment of Error 4

"In such case, it is error for the court to fail to consider evidence of defendant's wanton misconduct as it affects the defense of contributory negligence, because it was not pled specifically; and compounded error for the court to refuse to vacate and allow a technical amendment after rendering summary judgment against plaintiff."

Appellant's final argument is that the trial court erred in refusing to allow the filing of his amended complaint. The granting or denying of such motion is within the sound discretion of the trial court, but Civ. R. 15(A) states that leave of court to amend pleadings shall be given freely "when justice so requires." From the entirety of the record, we do not find that the court abused its discretion in refusing to hold that justice required this amendment.

Appellant filed his request to amend the complaint on March 13, 1981, ten days after the trial court granted summary judgment on behalf of Central Oil. In the amendment he wished to raise the issue of wanton misconduct as contributory negligence is not a defense to such misconduct. He based his allegations on the deposition of Shaw and affidavits of two of Central Oil's former employees. From the timing of these statements, we can see no reason justifying Shaw's delay in filing his amended complaint.

Shaw's deposition was taken in January 1980, more than a year before the summary judgment was granted. The statements of the former employees were taken in August 1978, long before the original complaint was filed commencing this action. Thus, any information required by Shaw to allege wanton misconduct was available long before the suit was ever filed. In light of this history we cannot find any abuse of discretion by the trial court in refusing to allow the amendment.

The first and second assignments of error are well taken; the third and fourth

are rejected. The judgment is reversed and the cause remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

BELL and HUNSICKER, JJ., concur.

HUNSICKER, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.